AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)      ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America<br><br>v.<br><br>CHAMS EDDINE HMAYEN,<br><br>Defendant(s) | Case No.   2:25-MJ-07427-DUTY |

**FILED**
CLERK, U.S. DISTRICT COURT

11/28/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ KM _____ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of November 25, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(5) | Alien in Possession of a Firearm and Ammunition |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*Dennis C. An*
_____
*Complainant's signature*

Dennis An, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone. Date: November 28, 2025

*Alicia G. Rosenberg*
_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Alicia G. Rosenberg, U.S. Magistrate Judge
*Printed name and title*

SAUSA: Blake Hannah

## AFFIDAVIT

I, Dennis C. An, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint against and arrest warrant for Chams Eddine HMAYEN, also known as Chams Dine HMYEN ("HMAYEN"), for a violation of 18 U.S.C. § 922(g)(5): Alien in Possession of a Firearm.

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, evidence in this matter, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF SPECIAL AGENT DENNIS AN

3.   I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI") and have been so employed since 2006.  I am currently assigned to the FBI Los Angeles Field Office, Southern California Drug Task Force ("SCDTF") High Intensity Drug Trafficking Area ("HIDTA") Group 44, where I investigate violations of federal law related to transnational organized crime, specifically, drug trafficking organizations operating in the Central District of California, to include violations of

money laundering, drug and weapons trafficking, and violence associated with such activities.

4. I completed a 17-week course at the FBI Academy in Quantico, Virginia, during which I received training in conducting investigations on violations of federal laws. Prior to joining the FBI, I was an officer in the United States Army.

5. My experience working as an FBI SA includes, but is not limited to, conducting physical surveillance, interviewing witnesses and subjects, authoring search warrants, executing search and arrest warrants, and managing informants. I have received training in, and am experienced in, the investigation of violations of federal law, including violations of federal weapons and drug conspiracy laws. I have participated in several gang investigations involving the organized distribution of illegal drugs. I have supervised or participated in numerous controlled drug/gun purchase operations using informants; monitored multiple gang/narcotics related Title III wiretap interceptions; supervised or participated in numerous physical and electronic surveillances; and have supervised or participated in numerous state and federal arrests for drug and violent crime related offenses. I have supervised or participated in the execution of several probation and parole searches of violent offenders, and numerous search warrants, resulting in the seizure of weapons, illegal drugs, proof of racketeering, and other evidence of federal and state criminal violations. I have also supervised and assisted in the supervision of the activities of several informants who have

provided information, collected gang/drug intelligence, and conducted controlled purchase operations, resulting in federal and state prosecution of gang, drug, and/or firearm offenders.

6.    Based upon my experience and training with the FBI as well as conversations that I have had with other, more experienced agents and law enforcement officers who specialize in narcotics investigations, I am familiar with the methods utilized by drug traffickers, to include the utilization of firearms and violence to further their drug trafficking activities.

### III. <u>STATEMENT OF PROBABLE CAUSE</u>

7.    Based on my review of law enforcement reports, videos, photos, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.    Federal Agents and Los Angeles Police Department Officers Conducted a Buy Bust Operation in the Skid Row Area of Downtown Los Angeles**

8.    On November 25, 2025, members of HIDTA Group 44 and the Los Angeles Police Department ("LAPD") Central Division Narcotics Enforcement Detail ("NED") conducted a controlled narcotics purchase and arrest operation, commonly referred to as a buy bust operation, targeting narcotics sales in the Skid Row area of Downtown Los Angeles utilizing an LAPD testifying informant ("TI")[1].

9.    During the operation, at approximately 12:30 p.m., the TI was directed by LAPD NED handlers Officers Castro and Haskell

---

[1] The LAPD Testifying Informant ("TI") has reported reliably in the past and is primarily motivated by monetary compensation for services rendered. The TI does not have a criminal history.

to the northeast corner of Gladys Avenue and 7th Street, an area known for narcotics sales resulting in prior arrests.  Upon arriving at the intersection, the TI encountered an unidentified black male ("UM1"). The TI told UM1, "I need a little something."  In my training and experience, I know that the TI was utilizing street slang to request the purchase of narcotics from UM1.

10.  UM1 informed the TI that a Hispanic male, later identified as A.N., was selling narcotics inside a brown, blue, black and gray tarp encampment. The encampment was later searched and Officer Galvez noted that the interior of the encampment did not have any kind of furniture or other indicia that people were using the encampment as a place to sleep. In my training and experience, such a location is utilized for the sole purpose of conducting illicit activities and does not serve as a domicile.

11.  The TI walked inside the encampment and met with A.N. During the meeting, A.N. walked outside the encampment and met with UM1. Through the encampment's tarp, the TI observed UM1 giving A.N. white solids resembling cocaine base. When A.N. returned to the encampment, the TI gave A.N. a twenty-dollar bill in exchange for two off-white solids resembling base cocaine.

12.  After the TI departed the encampment, the TI met with Officers Castro and Haskell, who seized the two off-white solids resembling cocaine base, which weighed approximately 1.91 gross grams. In my discussions with Officer Castro, the TI informed

the officers that there was another black male, later identified as HMAYEN, inside the encampment during the narcotics transaction.

13. Following the meeting with the TI, Officer Haskell requested uniformed officers to detain UM1, A.N., and any other occupants of the encampment. As the uniformed officers arrived on scene, UM1 was no longer at the location and nowhere to be found. Officers approached the encampment and announced to all occupants behind the tarp to come out. LAPD Officer Galvez detained A.N. without incident. Officer Kolke detained the only other occupant, HMAYEN, as he exited the encampment without incident.

14. During a search of the encampment, Officer Galvez found a loaded handgun near a scooter on the east side of the encampment.  The firearm had a round of ammunition in the chamber. Officer Galvez also seized a clear plastic sandwich bag containing approximately 3.79 gross grams of off-white solids resembling cocaine base and a clear plastic sandwich bag containing approximately 3.777 gross grams of crystalline solids resembling methamphetamine from the encampment.

15. Officer Kolke conducted a search of A.N.'s person and recovered a twenty-dollar bill from his left front pant pocket. The twenty-dollar bill's serial number matched the serial number of the twenty-dollar bill that was utilized by the TI to purchase the cocaine base. Officer Castro conducted a field show up with the TI who positively identified A.N. as the individual that sold the cocaine base to the TI. A.N. was arrested for

California Health and Safety Code § 11352(A), possession of cocaine base for sale.

16.  Officer Kolke conducted a search of HMAYEN and seized six rounds of live ammunition from his front right pant pocket. Officer Kolke recognized that three of the live rounds of ammunition were 9mm, the same caliber as the ammunition used in the handgun that was seized from the encampment. Due to HMAYEN being inside the encampment at the time it was searched and possessing the same caliber of ammunition as the seized handgun on his person, HMAYEN was arrested for a violation of Health and Safety Code § 11370.1(a), possession of a controlled substance while armed with a loaded firearm.

17.  After being admonished of their Miranda rights, neither A.N. nor HMAYEN agreed to speak with the investigating officers.

**B.    HMAYEN is a Citizen and National of Morocco and is Illegally Present in the United States**

18.  Upon arrest, HMAYEN informed officers that his name was Chams HMAYEN. Upon booking by LAPD officers, HMAYEN was fingerprinted and the fingerprints came back as a match to a Chams Eddine HMAYEN, also known as Chams Dine HMYEN, with an FBI Number P1RM389T8.

19.  Upon receiving the results of HMAYEN's full identity, I contacted Customs and Border Protection ("CBP") Officer Edward Becerril.

20. Officer Becerril conducted Department of Homeland Security indices checks on HMAYEN and discovered the following information regarding HMAYEN:

a. HMAYEN is a Moroccan national with Moroccan citizenship.

b. On April 11, 2023, HMAYEN was encountered by the CBP at the Arizona border and subsequently released pending an immigration court date.

c. On May 29, 2024, HMAYEN was ordered removed from the United States in absentia by an immigration judge.

21. Officer Becerril confirmed that HMAYEN does not have legal immigration status in the United States.

22. Officer Becerril provided me with a photograph of Chams Eddine HMAYEN, taken by CBP in 2023. I compared this photograph with a photograph of HMAYEN taken by LAPD officers on the day of his arrest on November 25, 2025, and confirmed that the photographs were a match.

C.   **Firearm Interstate Nexus**

23. On or about November 25, 2025, Bureau of Alcohol, Tobacco and Firearms ("ATF") SA David Gonzalez, an ATF Firearms and Ammunition Interstate Nexus Expert, examined photographs of the recovered ammunition and firearm.

24. SA Gonzalez made the following determinations regarding the firearm recovered from the encampment:

a. The Ruger, 9mm caliber semi-automatic pistol, bearing an obliterated serial number, was manufactured in

Arizona.  For this firearm to be found in the state of California, it must have traveled in interstate commerce.

25.  SA Gonzalez made the following determinations regarding the ammunition found in the magazine in the firearm recovered from the encampment:

a.  The thirteen rounds of Remington Peters ("RP"), 9mm Luger caliber ammunition, marked with the headstamp "RP 9mm LUGER", were manufactured in Arkansas.  For this ammunition to be found in the state of California, it must have traveled in interstate commerce.

26.  SA Gonzalez made the following determinations regarding the ammunition found in the chamber of the firearm recovered from the encampment:

a.  The one round of RP, 9mm Luger caliber ammunition, marked with the headstamp "RP 9mm LUGER", was manufactured in Arkansas.  For this ammunition to be found in the state of California, it must have traveled in interstate commerce.

27.  SA Gonzalez made the following determinations regarding the ammunition found in HMAYEN's front right pant pocket at the time of his arrest:

a.  The one round of Blazer, 9mm Luger caliber ammunition, marked with the headstamp "BLAZER 9mm LUGER", was manufactured in Idaho.  For this ammunition to be found in the state of California, it must have traveled in interstate commerce.

b.    The one round of Geco 9mm Luger caliber ammunition, marked with the headstamp "Geco 9mm LUGER", was manufactured by Dynamit Nobel AG in Germany.  For this ammunition to be recovered in the United States, in the state of California, it must have traveled in foreign and/or interstate commerce.

c.    The one round of Federal Cartridge, 9mm Luger caliber ammunition, marked with the headstamp "NFCR 9mm LUGER", was manufactured in Minnesota, Wisconsin, or Idaho.  For this ammunition to be found in the state of California, it must have traveled in interstate commerce.

d.    The three rounds of Cascade Cartridge Inc., .22 caliber ammunition, marked with the headstamp "C", were manufactured in Idaho.  For this ammunition to be found in the state of California, it must have traveled in interstate commerce.

## IV. <u>CONCLUSION</u>

For all of the reasons described above, there is probable cause to believe that Chams Eddine HMAYEN, also known as Chams Dine HMYEN, committed a violation of 18 U.S.C. § 922(g)(5): Alien in Possession of a Firearm.

_Dennis C. An_
_____
Dennis An, Special Agent
Federal Bureau of
Investigations

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 28th day of
November 2025.

_Alicia G. Rosenberg_
_____
HONORABLE ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE